UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANE A. ISCARO,

        Petitioner,                      Civil No. 06-11269
                                                     Honorable David M. Lawson

v.

CINDI S. CURTIN

        Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner Dane A. Iscaro was convicted by an Oakland County, Michigan jury of assault with intent to murder and possession of a firearm during the commission of a felony, and sentenced to a lengthy prison term. He filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, later amended, identifying five claims for relief based on errors in the jury instructions and admission of evidence, prosecutorial misconduct, and ineffective assistance of counsel. The respondent filed an answer to the amended petition asserting that the petitioner's first and second habeas claims are without merit because they are not cognizable upon federal review and that the petitioner's third, fourth, and fifth habeas claims are procedurally defaulted because the petitioner did not raise them in his direct appeal. The Court finds that the petitioner's claims lack merit and will deny the petition.

I.

The petitioner's convictions arise from a shooting that occurred on December 17, 2001 in the Village of Wolverine Lake. The day before, the petitioner sold marijuana to the shooting victim, Nathan Tobias, but Tobias refused to pay for it. For that reason, the petitioner shot Tobias.

Tobias was accompanied by Andy Berndt when they arranged to buy marijuana from the petitioner. Brendt testified that on December 16, 2001 Tobias called him because he wanted to buy marijuana. Berndt went with Tobias to meet the petitioner in the parking lot of a Red Lobster restaurant in Novi, Michigan so that Tobias could make his purchase. Berndt testified that on the way to Red Lobster, Tobias discussed his intention not to pay the petitioner. When Tobias and Berndt arrived, the petitioner approached them with $25 worth of marijuana. Tobias said he wanted to buy better quality marijuana. Tobias then went with the petitioner to the petitioner's vehicle. Berndt testified that Tobias returned with seven grams of marijuana worth about $80. The petitioner asked for payment for the marijuana and Tobias told the petitioner he would contact him in an hour. The petitioner again asked Tobias for payment and again Tobias refused. Berndt testified that the petitioner asked Berndt to help him get payment from Tobias, but Tobias insisted on leaving without paying. The petitioner offered to allow Tobias to keep a small amount of the marijuana until he could pay the petitioner. Tobias did not pay and he and Berndt drove away.

Later that evening, the petitioner called Berndt's home and told Berndt, "you're fucked." Trial Tr., Vol. II, Oct. 17, 2002, at 95. Berndt testified that he and Tobias did not take that statement as a serious threat. Berndt saw the petitioner the next day in the parking lot of Walled Lake Community High School and the petitioner gave Berndt the finger as Berndt was driving off. Berndt did not see the petitioner or Tobias again until after the shooting.

Joe Guerin testified that he and the petitioner were friends. Guerin testified that Robert Hall, the petitioner's co-defendant at trial, picked up Guerin from high school on the day of the shooting. Guerin said that Hall told him that the petitioner had a "glock" and had seen Berndt in Nick O'Dell's car. The petitioner got into Hall's vehicle and told Guerin that Berndt owed him money from the

night before and stated that he would have to shoot Berndt if Berndt did not pay him. Guerin admitted he did not take the petitioner seriously when he stated that he would have to shoot Berndt. Hall, Guerin, and the petitioner later drove past Nick O'Dell's house, where they saw Tobias's car parked outside. The petitioner directed Hall to back into O'Dell's driveway, pulled out a gun, and loaded a round into the chamber. The petitioner exited Hall's vehicle but left the gun in the car. Tobias and Dominick Fonte exited Tobias's vehicle. The petitioner retrieved the gun, pointed it at Tobias, and asked him, "do you have my money?" Trial Tr., Vol. II, Oct. 17, 2002, at 162-63 [dkt. # 12-9]. Guerin testified that Tobias told the petitioner that he did not have money, and that Tobias and Fonte appeared to walk toward the petitioner. The petitioner fired two shots at Tobias. After the second shot was fired, the petitioner jumped in Hall's vehicle and they fled the scene. Guerin testified that the petitioner said, "I heard it was hard to shoot someone for your first time, but it wasn't so hard." Trial Tr., Vol. II, Oct. 17, 2002, at 168. Guerin stated that he could not be certain whether the petitioner was scared by Tobias and Fonte.

Tobias testified that on December 16, 2001 Berndt called him to ask whether he was interested in buying a bag of marijuana. He stated he initially intended to pay the petitioner for the marijuana, but later changed his mind. Tobias testified that the next day, he was sitting in his vehicle with his friend Dominick Fonte parked in Nick O'Dell's driveway when he saw Hall's car drive past the house and back in to O'Dell's driveway. Tobias and Fonte exited their vehicle. When the petitioner exited Hall's vehicle, he asked Tobias where Andy Berndt was, and then demanded payment for the marijuana from Tobias. Tobias responded, "I don't got shit for you," and "you need to take that up with your boy" (referring to Berndt). Trial Tr., Vol. IV, Oct. 21, 2002, at 15. Tobias then said to the petitioner, "What, are you looking for a fight? Are you trying to start something?"

*Ibid*. The petitioner shot two bullets in Tobias's direction; the first shot struck Tobias in the abdomen and the second struck him in the elbow. After the petitioner fired the shots, Tobias ran into O'Dell's house and called 911.

Dominick Fonte was the only witness called by the defense, and he testified that on December 17, 2001 he was in Tobias's car in Nick O'Dell's driveway talking with Tobias. Tobias pulled out a bag of marijuana and said he had "jacked some kids the night before." Trial Tr., Vol. IV, Oct. 21, 2002, at 113. Fonte agreed that Tobias walked toward the petitioner. Fonte admitted he had been a member of a gang called the Insane Mafia Crips. Fonte stated that Tobias had not been a member of this gang, but defense counsel presented prior deposition testimony by Fonte in which he stated that Tobias had been a member of the gang. Tobias had testified earlier that he and Fonte had been friends since 1997, but denied that he was ever in a gang called the Insane Mafia Crips. Fonte did not know the petitioner at the time of the shooting.

The jury found the petitioner guilty of assault with intent to murder, Mich. Comp. Laws § 750.83, and possession of a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b. He was sentenced to a prison term of 14 to 40 years for assault and a consecutive term of two years for the firearm conviction.

On direct appeal, the petitioner's appellate counsel filed a brief alleging error because the trial court admitted evidence that the firearm used in the shooting had been reported stolen, and the trial court refused the petitioner's request for a self-defense instruction. The petitioner filed a *pro se* brief raising five more claims, including the improper admission of flight evidence, denial of due process resulting from the admission of graphic photographs, prosecutorial misconduct during closing argument, ineffective assistance of counsel, and improper sentencing. The Michigan Court

of Appeals affirmed the petitioner's conviction in an unpublished opinion. *People v. Iscaro*, No. 246077, 2004 WL 915026 (Mich. Ct. App. Apr. 29, 2004).

The petitioner, through counsel, filed an application for leave to appeal in the Michigan Supreme Court that raised the two claims presented in his appellate counsel's brief and the five claims presented in his *pro se* supplemental brief. The Michigan Supreme Court denied leave to appeal on December 29, 2004. *People v. Iscaro*, 471 Mich. 948, 690 N.W.2d 110 (2004) (table).

The petitioner obtained new counsel and on March 27, 2006 filed a petition for writ of habeas corpus in this Court that raised five claims. However, when the petitioner realized that some of them had not been exhausted properly, he asked to abate his petition and return to state court. On April 21, 2006, the Court granted the petitioner's motion to stay and administratively closed the case. The petitioner pursued his post conviction remedies in state court, and those proceedings concluded on September 24, 2007 when the state supreme court once again denied leave to appeal. *People v. Iscaro*, 480 Mich. 890, 738 N.W.2d 733 (2007) (table).

On October 22, 2007, the petitioner filed the presently-pending amended petition for a writ of habeas corpus. The amended petition raises the following five claims:

I. Petitioner was denied his right to due process of law and a fair trial under the Fifth, Sixth, and Fourteenth Amendments when the state court refused to instruct the jury on the law of self-defense.

II. Petitioner was denied his right to due process and a fair trial under the Fifth, Sixth, and Fourteenth Amendments when the state court admitted evidence that the gun used in the shooting was stolen.

III. Petitioner was denied effective assistance of counsel in violation of his Sixth Amendment rights when his attorney failed to properly investigate, prepare, and present [the petitioner's] self-defense claim at trial.

>   IV.   Petitioner was denied due process and a fair trial under the Fifth, Sixth, and Fourteenth Amendments when the prosecuting attorney failed to correct false testimony of the complaining witness.
>
>   V.    Petitioner was denied due process of law and a fair trial in violation of the Fifth, Sixth, and Fourteenth Amendments by the cumulative effect of the constitutional errors that occurred at his trial.

Memo. in Support of Am. Pet. at ii.

The respondent filed an answer to the amended petition, arguing that the petitioner should be denied relief on his first two claims because the claims are not cognizable upon federal habeas review. The respondent argues that the next three claims are procedurally defaulted because the petitioner failed to raise the issues on direct appeal in the Michigan Court of Appeals.

However, "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones,* 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary,* 520 U.S. 518, 525 (1997)). Although a procedural bar may preclude relief, "[j]udicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix,* 520 U.S. at 525. In this case, the Court finds that the interests of judicial economy are best served by addressing the merits of the petitioner's claims.

## II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering an application for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). As amended, 28 U.S.C. § 2254(d) permits a federal

court to issue the writ only if the state court decision on a federal issue "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or it amounted to "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2); *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Under that review standard, mere error by the state court does not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (internal quotes omitted)). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision

unreasonably applies the law of this Court to the facts of a prisoner's case." *Id*. at 409.  The Court has explained that an unreasonable application of federal law is different from an incorrect application of federal law.  Under that language, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. The Supreme Court has continued to emphasize the limited nature of this review.  In its recent unanimous decision in *Harrington v. Richter*, --- U.S. ---, 131 S. Ct. 770 (2011), the Court reiterated that the AEDPA requires federal habeas courts to review state court decisions with "deference and latitude," and "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The Sixth Circuit observed recently that "[t]his is a very high standard, which the [Supreme] Court freely acknowledges." *Peak v. Webb*, --- F.3d ---, ---, 2012 WL 833179, at *5 (6th Cir. Mar. 14, 2012).  The court suggested that *Richter* holds that the review standard "is even more constricted than AEDPA's plain language already suggests." *Ibid.*

The distinction between mere error and an objectively unreasonable application of Supreme Court precedent creates a substantially higher threshold for obtaining relief than *de novo* review. The AEDPA thus imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be "given the benefit of the doubt." *Renico v. Lett*, --- U.S. ---, ---, 130 S. Ct. 1855, 1862 (2010) (finding that the state court's rapid declaration of a mistrial on grounds of jury deadlock was not unreasonable even where "the jury only deliberated for four hours, its notes were arguably ambiguous, the trial judge's initial question to the foreperson was imprecise,

and the judge neither asked for elaboration of the foreperson's answers nor took any other measures to confirm the foreperson's prediction that a unanimous verdict would not be reached" (internal quotation marks and citations omitted)); *see also Peak*, 2012 WL 833179, at *5; *Bray v. Andrews*, 640 F.3d 731, 737-39 (6th Cir. 2011); *Phillips v. Bradshaw*, 607 F.3d 199, 205 (6th Cir. 2010); *Murphy v. Ohio*, 551 F.3d 485, 493-94 (6th Cir. 2009); *Eady v. Morgan*, 515 F.3d 587, 594-95 (6th Cir. 2008); *Davis v. Coyle*, 475 F.3d 761, 766-67 (6th Cir. 2007); *King v. Bobby*, 433 F.3d 483, 489 (6th Cir. 2006); *Rockwell v. Yukins*, 341 F.3d 507, 511 (6th Cir. 2003) (en banc). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, --- U.S. ---, 131 S. Ct. 1388, 1398 (2011).

A.

In his first claim, the petitioner argues that he was denied his right to due process of law and a fundamentally fair trial when the trial court denied his request for a self-defense jury instruction. The respondent argues that the claim is not cognizable upon federal habeas review and must fail for lack of merit because a "federal court may not issue the writ on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984).

The respondent's argument reflects a misunderstanding of this basic issue. Under the Due Process Clause, which is found in the federal Constitution, a defendant generally "is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." *Mathews v. United States*, 485 U.S. 58, 63 (1988); *see also United States v. Demmler*, 655 F.3d 451, 456 n. 1 (6th Cir. 2011). "The failure to give a requested self-defense instruction, however, does not deprive the defendant of his constitutional right to due process if the evidence produced during trial was insufficient to warrant such an instruction." *Allen v. Morris*, 845

F.2d 610, 617 (6th Cir. 1988); *see also Gimotty v. Elo*, 40 F. App'x 29, 33-34 (6th Cir. 2002). An instructional error may entitle a petitioner to habeas relief, but only if the defective jury instructions "so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *see also Daniels v. Lafler*, 501 F.3d 735, 741 (6th Cir. 2007).

In this case, the trial court refused to instruct the jury on the defense of self-defense because it held that the evidence did not support such an instruction. The Michigan Court of Appeals also concluded that there was no evidence that would support a self-defense instruction. The appellate court summarized the governing law regarding self-defense as follows:

> The first requirement of a claim of self-defense or defense of others is that a defendant act in response to an assault. *Detroit v. Smith*, 235 Mich. App 235, 238; 597 N.W.2d 247 (1999). To act in lawful self-defense when a defendant uses deadly force, the defendant must have an honest and reasonable belief of the danger of serious bodily harm or death and may only employ the amount of force necessary to defend himself. *People v. Heflin*, 434 Mich. 482, 507-509; 456 N.W.2d 10 (1990). To satisfy the necessary element of self-defense, the defendant must try to avoid the use of deadly force if he can safely do so by applying nondeadly force or utilizing an avenue of retreat. [*People v. Riddle*, 467 Mich. 116, 119; 649 N.W.2d 30 (2002)].

*Iscaro*, 2004 WL 915026, at *2 (Mich. Ct. App. Apr. 29, 2004). That court concluded that the record revealed that no evidence to support a finding that the petitioner acted in response to an assault by the victim. Further, there was no evidence that either the victim or Fonte possessed a weapon or were advancing on the petitioner. Finally, the court found no evidence that the petitioner attempted to retreat. Therefore, the court found, a self-defense instruction was not supported by the evidence.

The petitioner argues that the state courts erred because there was some evidence to support that instruction, and a self-defense instruction should be given even where the evidence supporting it is weak. However, the state courts' interpretation of the record is not unreasonable. The petitioner

has not identified any evidence that he shot Tobias in response to an impending assault or that he could not retreat in safety. Instead, he points to the fact that the victim and Fonte approached the petitioner and evidence that the victim and Fonte may have been members of a gang. Although perhaps a trial court might give a self-defense instruction on such scant evidence as that, this Court cannot conclude that the state court's failure to give that instruction was contrary to or an unreasonable application of Supreme Court precedent. The petitioner's trial was not rendered fundamentally unfair. And the court of appeals's "determination that [the] claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 131 S. Ct. at 786 (quoting *Yarborough*, 541 U.S. at 664). Such is the case here.

B.

Next, the petitioner argues that he was denied his right to due process of law and a fair trial when the trial court admitted testimony that the gun used in the shooting was stolen. The petitioner believes that constituted impermissible propensity evidence, as the fact that the gun was stolen is not relevant to any issue of fact and was used by the prosecution solely as improper propensity evidence.

The Michigan Court of Appeals rejected the petitioner's claim on the basis that the evidence was properly admitted because it was relevant to the charged crimes and helped to establish intent. The court reasoned that proof that the petitioner carried a stolen gun, showed it to witnesses, and threatened to kill the victim was relevant to demonstrate intent, especially where the petitioner was proceeding on a theory of self-defense. According to the state appellate court, the "fact that [the petitioner] acquired a gun that was not legally registered or traceable to him and carried the gun on

-11-

his person contradicted [the petitioner's] claim of fear of the victim." *Iscaro*, 2004 WL 915026 at at *2.

The logic behind that reasoning tends to unravel in the absence of evidence tending to show when the petitioner acquired the gun (he apparently had possessed it well before Tobias stiffed him on the marijuana deal) or that he knew it had been stolen. No matter. Even if the evidence showed only the petitioner's propensity to commit crimes, no federal constitutional violation occurred.

"[S]tate-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996). The United States Supreme Court has declined to hold that the admission of "other acts" evidence is so extremely unfair that it violates fundamental conceptions of justice. *See Dowling v. United States*, 493 U.S. 342, 352-53 (1990). The Supreme Court has addressed whether other acts testimony is permissible under the Federal Rules of Evidence, *see Huddleston v. United States*, 485 U.S. 681 (1988), but it has not addressed the issue in constitutional terms. Such matters are more appropriately addressed in codes of evidence and procedure than under the Due Process Clause. *Dowling*, 493 U.S. at 352. "There is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). Consequently, there is no "clearly established federal law" to which the state court's decision could be "contrary" within the meaning of section 2254(d)(1). *Id.* at 513. Therefore, the Court must deny relief on this claim.

C.

The petitioner next argues that he was denied the effective assistance of counsel when his lawyer failed to investigate, prepare, and present a self-defense claim. The petitioner argues that his lawyer should have found and presented evidence of Dominick Fonte's and Nathan Tobias's gang membership and their reputations for violence and brutally assaultive behavior. The petitioner also argues that his lawyer should have called the petitioner to testify in his own defense because he could have testified that he was aware of Fonte's and Tobias's reputations for violence and his resultant fear of them. The petitioner asserts that failure to call him to testify prevented the jury from hearing compelling evidence of the petitioner's honest and reasonable fear of Tobias and Fonte at the time of the shooting.

The only reasoned state court decision addressing those issues came from the trial judge, who denied the petitioner's post-conviction motion for relief from judgment. That court held:

> Defendant argues that his trial counsel was ineffective for failing to investigate and present a self-defense justification for the shooting. "A defendant is entitled to have his counsel prepare, investigate, and present all substantial defenses." *People v. Kelly*, 186 Mich. App. 524, 526; 465 N.W.2d 569 (1990). "A substantial defense is one that might have made a difference in the outcome of the trial." *Id.* After reviewing the elements of self-defense, the Court of Appeals concluded that there was no evidence that Defendant acted in response to an assault by the victim or that the victim or his friend possessed a weapon or were advancing on Defendant. Evidence of past gang membership or of a prior violent incident involving the victim and his friend would not have altered these essential facts. The alleged failure to investigate the victim and his friend did not result in counsel's ignorance of valuable evidence that would have substantially benefitted the accused. *People v. Caballero*, 184 Mich. App. 636, 640; 459 N.W.2d 80 (1990).
>
> Contrary to Defendant's claim, the record shows that trial counsel's representation did not fall below the standard of reasonableness and that he advocated the defense according to prevailing professional norms. . . . As the United States Supreme Court has held, counsel is not required to do what is impossible. *United States v. Cronic*, 466 U.S. 648, 656 n.19; 104 S. Ct. 2039; 80 L.Ed. 2d 657 (1984). If there is no bona fide defense to the charge, counsel cannot create one. *Id.* . . . Defendant has failed to show how trial counsel's alleged deficient representation resulted in prejudice.

*People v. Iscaro*, No. 02-183790-FC (Oakland County Cir. Ct. Aug. 24, 2006) at 3-4.

Measured against the rigorous criteria established by Congress and the Supreme Court, it is inconceivable that the trial court's reasoning could be considered an unreasonable application of Supreme Court precedent.

The two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), governs the Court's analysis of ineffective-assistance-of-counsel claims. *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). "To establish ineffective assistance of counsel 'a defendant must show both deficient performance by counsel and prejudice.'" *Premo v. Moore*, --- U.S. ---, ---, 131 S. Ct. 733, 739 (2011) (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)).

Because of the high deference accorded state court determinations by AEDPA, establishing that counsel was ineffective and, therefore, the petitioner was denied his right to counsel under the Sixth Amendment is difficult. The Supreme Court explained recently:

> "Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. ---, ---, 130 S. Ct. 1473, 1485 (2010). . . . The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S. at 690.
>
> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id*., at 689; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at ---, 129 S. Ct. at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ---, 129 S. Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington v. Richter*, 131 S. Ct. at 788.

On habeas review, "[t]he question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable — a substantially higher threshold.'" *Knowles*, 556 U.S. at 123 (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). Moreover, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Ibid.* (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

The petitioner also must overcome the obvious rejoinder that trial counsel's decisions on what evidence to present and whom to call to the witness stand must be relegated to trial strategy. In *Strickland,* the Supreme Court held that

> strategic choices made after a thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after a less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Strickland*, at 690-91; *see also Brown v. Smith*, 551 F.3d 424, 430 (6th Cir. 2008). Decisions as to what evidence to present and whether to call certain witnesses are generally presumed to be a matter of trial strategy, although such decisions must be reasonable. *See Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000). The failure to call witnesses or present other evidence may constitute ineffective assistance of counsel only when it deprives a defendant of a substantial defense. *See Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002).

The petitioner has failed to show that his trial counsel was ineffective by failing to offer testimony regarding Dominick Fonte's and Nathan Tobias's gang affiliation and violent natures.

The petitioner has not shown that such evidence would have supported a self-defense theory. Under Michigan law, a person acts in lawful self-defense if "he honestly and reasonably believes that his life is in imminent danger or that there is a threat of serious bodily harm." *People v. Kurr*, 253 Mich. App. 317, 320-321, 654 N.W.2d 651, 653 (2002) (quoting *People v. Heflin*, 434 Mich. 482, 502, 456 N.W.2d 10, 18 (1990)). "[T]he defense is not available when a defendant is the aggressor unless he withdraws from any further encounter with the victim and communicates such withdrawal to the victim." *People v. Kemp,* 202 Mich. App. 318, 323, 508 N.W.2d 184, 187 (1993). As the Michigan Supreme Court has stated:

> A participant in voluntary mutual combat will not be justified in taking the life of another until he is deemed to have retreated as far as safely possible. One who is involved in a physical altercation in which he is a willing participant . . . is *required* to take advantage of any reasonable and safe avenue of retreat before using deadly force against his adversary, should the altercation escalate into a deadly encounter.

*People v. Riddle*, 467 Mich. 116, 120, 649 N.W.2d 30, 35 (2002) (footnote omitted).

The evidence presented at trial showed that the petitioner had discussed retaliating against Andy Berndt for stealing marijuana from him. Several witnesses testified that the petitioner said he would shoot Berndt if Berndt did not pay for the marijuana. The petitioner went looking for Berndt's car on the day of the shooting. When he saw Tobias's car, the petitioner pulled out a gun and loaded it. The petitioner exited the vehicle and asked Tobias for the money he was owed. When Tobias said he did not have the money, the petitioner fired two shots at him. Would it have been reasonable for trial counsel to present testimony about the alleged gang affiliation of Tobias and Fonte or their reputation for violence? Certainly. But it was not unreasonable for the trial court to find that the failure to do so did not amount to deficient performance. The uncontradicted testimony showed that the petitioner spoke several times about shooting Berndt, and he tracked down Tobias

-16-

while carrying a loaded weapon in his own vehicle so he could collect a drug debt. Even if the petitioner testified that he was in fear that he would suffer serious physical injury when talking to Tobias, he could have withdrawn from the encounter by reentering the vehicle and driving away. In light of the high bar a habeas petitioner must surmount when presenting an ineffective assistance of counsel claim, the trial court's reasoning and conclusion is unassailable.

Nor would the petitioner's testimony have provided sufficient support for a self-defense theory. Even if the petitioner had been called to describe his legitimate fear of Tobias and Fonte, his testimony would not have foreclosed the possibility that he could have chosen to retreat by entering the vehicle and fleeing rather than reaching for his gun and shooting twice. The failure to call the petitioner as a witness cannot be said to have deprived the petitioner of a substantial defense. The state court's denial of relief on this issue is not contrary to or an unreasonable application of Supreme Court precedent.

D.

Next, the petitioner argues that he was denied due process and a fair trial when the prosecutor failed to correct false testimony offered by Nathan Tobias. The petitioner argues that Nathan Tobias likely committed perjury when he denied on cross-examination being a member of the gang Insane Mafia Crips. The petitioner's contention that Tobias committed perjury is based on the testimony from Dominick Fonte, Tobias's friend who was present with Tobias on the day of the shooting. In an unrelated prior civil case, Fonte gave deposition testimony under oath that he and Tobias had both been in the gang Insane Mafia Crips. Fonte also testified to that fact in this case. The petitioner acknowledges that it is unclear whether the prosecutor knew that Tobias's testimony was false.

-17-

This claim was presented for the first time in the petitioner's motion for relief from judgment. The trial court, the last state court to issue a reasoned opinion on the claim, denied relief, writing:

> Defendant's claim that the prosecutor failed to correct false testimony does not provide grounds for relief. A prosecutor may not knowingly use false testimony to obtain a conviction and must correct false evidence. *People v. Lester*, 232 Mich. App. 262, 277; 591 N.W.2d 267 (1998). Defendant admits that "it is unclear from the record whether or not the prosecuting attorney knew or should have known that the testimony was false." Though defendant claims that witness testimony established that the victim lied about his gang member [sic], he fails to allege that the conviction was obtained through the use of that testimony. The record does not support a finding that Defendants [sic] convictions were secured by false evidence or that the prosecutor either knowingly presented false evidence or knowingly allowed false testimony to stand uncorrected.

*Iscaro*, No. 02-183790-FC (Oakland County Cir. Ct. Aug. 24, 2006) at 4-5.

It is well established that "a conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs*, 427 U.S. 97, 103 (1976). This is true whether the false testimony goes to the defendant's guilt or to a witness's credibility, and it does not matter whether the prosecution directly elicits the false testimony or merely allows false testimony to go uncorrected. *Napue v. Illinois*, 360 U.S. 264, 270-72 (1959). It is equally well established, however, that the petitioner bears the burden of proving that the testimony amounted to perjury. Mere inconsistencies in witness testimony do not establish the government's knowing use of false testimony. *United States v. Griley*, 814 F.2d 967, 971 (4th Cir. 1987). "[N]ot every testimonial inconsistency that goes uncorrected by the government establishes a constitutional violation." *United States v. Verser*, 916 F.2d 1268, 1271 (7th Cir. 1990). Therefore, to establish relief on his false testimony claim, the petitioner "must show (1) that the prosecution

presented false testimony (2) that the prosecution knew was false, and (3) that was material." *Abdus-Samad v. Bell*, 420 F.3d 614, 625-26 (6th Cir. 2005). "Moreover, the [petitioner] must show that the statement in question was 'indisputably false,' rather than merely misleading." *Byrd v. Collins*, 209 F.3d 486, 517 (6th Cir. 2000) (quoting *United States v. Lochmondy*, 890 F.2d 817, 823 (6th Cir. 1989)).

In this case, although Tobias and Fonte gave conflicting testimony about Tobias's gang membership, the petitioner has not shown that Fonte's rather than Tobias's testimony was truthful. The petitioner merely has argued that Tobias "likely committed perjury." Petitioner's Br. in Support of Am. Pet. at 22. That does not demonstrate that Tobias's testimony was "indisputably false." *Lochmondy*, 890 F.2d at 823. In addition, he has not shown that the testimony was material. The petitioner argues that the testimony was material because proof that Tobias was a gang member would have lent support to the petitioner's self-defense theory and reflected negatively on Tobias's credibility. However, even if it had been established at trial that Tobias was a gang member, the petitioner would not have been able to meet the requirements for self-defense under Michigan law, as explained earlier. Moreover, even assuming the testimony was false, the petitioner cannot say whether or not the prosecuting attorney knew or should have known that this testimony was false. Therefore, the Court finds that the state court's holding was not contrary to or an unreasonable application of *Agurs* or *Napue*. The Court must deny habeas relief on this claim.

E.

Finally, the petitioner argues that the cumulative nature of the alleged errors rendered his trial fundamentally unfair and denied him the right to due process of law. The cumulative weight of alleged constitutional trial errors in a state prosecution does not warrant federal habeas relief

because there is no clearly established federal law permitting or requiring the cumulation of distinct constitutional claims to grant habeas relief. *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005). Therefore, the petitioner is not entitled to habeas relief on the grounds of cumulative error.

### III.

The state court decisions in this case were not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts. The petitioner has not established that he is in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petitioner's amended petition for a writ of habeas corpus [dkt. #4] is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: March 21, 2012

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 21, 2012.

s/Deborah R. Tofil
DEBORAH R. TOFIL

---